## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RICHARD LAWRENCE,<br><br>                    Plaintiff,<br><br>          v.<br><br>HORIZON THERAPEUTICS PUBLIC LIMITED COMPANY, TIMOTHY P. WALBERT, MICHAEL GREY, WILLIAM F. DANIEL, JEFF HIMAWAN, SUSAN MAHONY, GINO SANTINI, JAMES SHANNON, H. THOMAS WATKINS, and PASCALE WITZ,<br><br>                    Defendants. | Case No.<br><br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Richard Lawrence ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

## NATURE OF THE ACTION

1.     Plaintiff brings this action against Horizon Therapeutics Public Limited Company ("Horizon" or the "Company") and its corporate directors for violating Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. §240.14a-9 ("Rule 14a-9"), in connection with the proposed acquisition of the Company by Amgen Inc. ("Amgen").[1]

2.     On December 11, 2022, the Company entered into a Transaction Agreement (the "Transaction Agreement") with Amgen and Amgen's wholly owned subsidiary Pillartree Limited

---

[1] The proposed acquisition of the Company described herein is referred to as the "Proposed Transaction."

("Acquirer Sub").  The Transaction Agreement provides that Company stockholders will receive $116.50 in cash for each Horizon common share.

3.      The Company's corporate directors subsequently authorized the January 23, 2023, filing of a materially incomplete and misleading Schedule 14A Definitive Proxy Statement (the "Proxy Statement") with the SEC.  The Proxy Statement, which recommends that Company stockholders vote their shares in favor of the Proposed Transaction, omits or misrepresents material information necessary and essential to that decision.  Defendants authorized the issuance of the false and misleading Proxy Statement in violation of the Exchange Act.

4.      It is imperative that the material information omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote on the Proposed Transaction, so that they can properly exercise their rights, among other things.[2]

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to the Company's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

---

[2] The stockholder vote on the Proposed Transaction currently is scheduled for February 24, 2023.

7.      Personal jurisdiction exists over the defendants because each defendant either conducts business in or maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because defendants are found or are inhabitants or transact business in this District.  Horizon's common stock trades on the Nasdaq Global Select Market, which is headquartered in this District, rendering venue in this District appropriate.

## THE PARTIES

9.      Plaintiff is, and has been at all times relevant hereto, the owner of Horizon common stock.

10.      Defendant Horizon is a public company registered in Ireland, with its principal executive offices located at 70 St. Stephen's Green, Dublin 2, D02 E2X4, Ireland.  Horizon's shares trade on the Nasdaq Global Select Market under the ticker symbol "HZNP."  Founded in 2005, Horizon is a biotechnology company focused on the discovery, development, and commercialization of medicines that address critical needs for people impacted by rare, autoimmune, and severe inflammatory diseases.  Horizon operates in two reportable segments: Orphan and Inflammation.  As of September 30, 2022, the Company's commercial portfolio includes 12 medicines in the areas of rare diseases, gout, ophthalmology, and inflammation. Within its Orphan segment, Horizon markets TEPEZZA (teprotumumab-trbw) for intravenous infusion, KRYSTEXXA (pegloticase injection) for intravenous infusion, RAVICTI (glycerol phenylbutyrate) oral liquid, PROCYSBI (cysteamine bitartrate) delayed-release capsules and granules for oral use, ACTIMMUNE (interferon gamma-1b) injection for subcutaneous use,

BUPHENYL (sodium phenylbutyrate) tablets and powder for oral use, QUINSAIR (levofloxacin) solution for inhalation, and UPLIZNA (inebilizumab-cdon) injection for intravenous use.  In addition, within its Inflammation segment, Horizon markets PENNSAID (diclofenac sodium topical solution) for topical use, DUEXIS (ibuprofen/famotidine) tablets for oral use, RAYOS (prednisone) delayed-release tablets for oral use, and VIMOVO (naproxen/esomeprazole magnesium) delayed-release tablets for oral use.  The Company also has several collaboration agreements, including collaboration agreements with HemoShear Therapeutics, LLC., Alpine Immune Sciences, Inc., Halozyme Therapeutics, Inc., Arrowhead Pharmaceuticals, Inc., and Xeris Biopharma Holdings, Inc.

11.     Defendant Timothy P. Walbert is has been Chairman of the Board and President, Chief Executive Officer and a director of the Company at all times relevant hereto.

12.     Defendant Michael Grey is and has been the Lead Independent Director of the Company at all times relevant hereto.

13.     Defendant William F. Daniel is and has been a director of the Company at all times relevant hereto.

14.     Defendant Jeff Himawan is and has been a director of the Company at all times relevant hereto.

15.     Defendant Susan Mahony is and has been a director of the Company at all times relevant hereto.

16.     Defendant Gino Santini is and has been a director of the Company at all times relevant hereto.

17.     Defendant James Shannon is and has been a director of the Company at all times relevant hereto.

18.     Defendant H. Thomas Watkins is and has been a director of the Company at all times relevant hereto.

19.     Defendant Pascale Witz is and has been a director of the Company at all times relevant hereto.

20.     Defendants identified in paragraphs 11-19 are collectively referred to herein as the "Board" or the "Individual Defendants."

SUBSTANTIVE ALLEGATIONS

**The Proposed Transaction**

21.     On December 12, 2022, the Company announced in relevant part:

**Summary**

- The board of directors of Horizon Therapeutics plc (the "**Company**" or "**Horizon**") and the board of directors of Amgen Inc. ("**Amgen**") are pleased to announce that they have reached agreement on the terms of a cash offer for the Company by Pillartree Limited ("**Acquirer Sub**"), a newly formed private limited company wholly owned by Amgen, which is unanimously recommended by the Company Board and pursuant to which Acquirer Sub will acquire the entire issued and to be issued ordinary share capital of the Company. Under the terms of the Acquisition, each Company Shareholder at the Scheme Record Time will be entitled to receive:

**$116.50 for each Company Share in cash**

- The Acquisition represents:

  ° a premium of approximately 47.9% to the closing price of $78.76 per Company Share on November 29, 2022 (being the last closing price per Company Share prior to the Company's issuance of an announcement of a possible offer under Rule 2.4 of the Irish Takeover Rules); and

  ° a premium of approximately 19.7% to the closing price of $97.29 per Company Share on December 9, 2022.

- The Acquisition values the entire issued and to be issued ordinary share capital of the Company at approximately $27.8 billion on a fully diluted basis and implies an enterprise value of approximately $28.3 billion.

- Amgen has entered into a Bridge Credit Agreement, dated December 12, 2022, for an aggregate amount of $28.5 billion, by and among Amgen, Citibank N.A., as administrative agent, Bank of America, N.A., as syndication agent, and Citibank, N.A. and Bank of America, N.A. as lead arrangers and book runners, and the other banks from time to time party thereto to finance, together with Amgen's own cash resources, the Acquisition. Further information on the financing of the Acquisition will be set out in the Proxy Statement (which will include the Scheme Document).

- Commenting on today's announcement, Tim Walbert, chairman, president and chief executive officer of the Company said:

"*In nearly 15 years, we have built one of the fastest growing and most respected companies in the biotechnology industry from the ground up. We have accomplished a tremendous amount for patients, their families and our customers, and created significant value for shareholders. These accomplishments are all rooted in our employees' deep commitment, dedication and personal passion for those impacted by rare, autoimmune and severe inflammatory diseases. Amgen is aligned with that commitment and passion and will continue to maximise the value of the current portfolio and pipeline and accelerate the ability to reach more patients globally.*"

- Commenting on today's announcement, Robert A. Bradway, chairman and chief executive officer of Amgen said:

"*The acquisition of Horizon is a compelling opportunity for Amgen and one that is consistent with our strategy of delivering long-term growth by providing innovative medicines that address the needs of patients who suffer from serious diseases. Amgen's decades of leadership in inflammation and nephrology, combined with our global presence and world-class biologics capabilities, will enable us to reach many more patients with first-in-class medicines like TEPEZZA, KRYSTEXXA and UPLIZNA. Additionally, the potential new medicines in Horizon's pipeline strongly complement our own R&D portfolio. The acquisition of Horizon will drive growth in Amgen's revenue and non-GAAP EPS and is expected to be accretive from 2024.*"

**Amgen Background to and Reasons for the Acquisition**

Amgen believes that there is a compelling strategic and financial rationale for undertaking the Acquisition, which is expected to deliver the following benefits:

- Strengthens Amgen's portfolio of first-in-class / best-in-class innovative therapeutics by adding a complementary portfolio of medicines from Horizon that address the needs of patients suffering from rare diseases;

- Capitalises on Amgen's 20-year commercial and medical legacy in inflammation and nephrology and its global scale to enhance the growth potential of Horizon's portfolio;

- Utilises Amgen's industry-leading research and development, process development and global manufacturing expertise in biologic medicines for the benefit of Horizon's approved medicines and potential new medicines;

- Generates robust cash flow (approximately $10 billion combined over twelve months through Q3 2022)[1] to support capital allocation priorities, including ongoing investment in innovation and continued dividend growth while sustaining a commitment to an investment grade credit rating;

- Accelerates revenue growth and is expected to be accretive to non-GAAP earnings per share from 2024; and

- Increases efficiency for the Combined Group, leading to an estimated annual pre-tax cost reduction of at least $500 million by the end of the third fiscal year following Completion.

**Company Board Recommendation**

- Having taken into account the relevant factors and applicable risks, the Company Board, which has been so advised by Morgan Stanley, which as financial advisor to the Company Board has rendered a fairness opinion, considers the terms of the Acquisition as set out in this Announcement to be fair and reasonable. In providing its advice to the Company Board, Morgan Stanley has taken into account the commercial assessments of the Company Directors. The Company Board has unanimously determined that the Transaction Agreement and the Transactions, including the Scheme, are advisable for, fair to and in the best interests of, the Company Shareholders.

- Accordingly, the Company Board unanimously recommends that Company Shareholders vote in favour of the Scheme Meeting Resolution and the Required EGM Resolutions, or, if the Acquisition is implemented by a Takeover Offer, accept or procure acceptance of such Takeover Offer.

**Timeline and Conditions**

- It is agreed that the Acquisition will be implemented by way of an Irish High Court-sanctioned scheme of arrangement under Chapter 1 of Part 9 of the Irish Companies Act (although Acquirer Sub reserves the right to effect the Acquisition by way of a Takeover Offer, subject to the provisions of the Transaction Agreement and the Irish Takeover Rules and with the consent of the Irish Takeover Panel).

- The Acquisition will be subject to the satisfaction or waiver (as applicable) of the Conditions, which are set out in full in Appendix 3 (*Conditions of the Acquisition and the Scheme*) to this Announcement, including, in summary:

  ° the requisite approval by Company Shareholders of the Scheme Meeting Resolution and the Required EGM Resolutions;

  ° the sanction of the Scheme by the Irish High Court; and

  ° the receipt of required antitrust clearances in the United States, Austria and Germany and the receipt of required foreign investment clearances in France, Germany, Denmark and Italy.

- It is expected that the Scheme Document, containing further information about the Acquisition and notices of the Scheme Meeting and the EGM, the expected timetable for Completion and action to be taken by Company Shareholders, will be published as soon as practicable. It is anticipated that the Scheme will, subject to obtaining the necessary regulatory approvals, be declared effective in the first half of 2023. An expected timetable of key events relating to the Acquisition will be provided in the Scheme Document.

[1] For the twelve months through Q3 2022, Amgen GAAP operating cash flow of $9.88 billion less Amgen capital expenditures of $883 million plus Horizon GAAP operating cash flow of $1.37 billion less Horizon capital expenditures of $56 million = ~$10 billion

**Advisors**

- The Company's financial advisors in respect of the Acquisition are Morgan Stanley and J.P. Morgan. The Company's legal advisors are Cooley LLP and Matheson LLP.

- Amgen's lead financial advisor in respect of the Acquisition is PJT Partners and its financial advisor is Citigroup. Amgen's legal advisors are Sullivan & Cromwell LLP and William Fry LLP.

## The Materially Incomplete and Misleading Proxy Statement

22.     The Board caused to be filed the materially incomplete and misleading Proxy Statement with the SEC on January 23, 2022.  The Proxy Statement, which recommends that Horizon stockholders vote their shares in favor of the Proposed Transaction, fails to disclose material information to Company stockholders, or provides them with materially misleading

information, concerning: (a) the financial forecasts for the Company and Amgen; (b) the financial analyses that support the fairness opinion provided by the Company's financial advisor Morgan Stanley & Co. LLC ("Morgan Stanley"); and (c) potential conflicts of interest faced by the Company's additional financial advisor J.P. Morgan Securities LLC ("J.P. Morgan").

***Material Misrepresentations and/or Omissions Concerning the Financial Forecasts for Horizon***

23.     The Proxy Statement fails to disclose material information concerning the financial forecasts for Horizon, including the "unlevered free cash flows projected to be generated by Horizon's existing products and product candidates for fiscal years 2023 through 2037" utilized by Morgan Stanley in connection with its *Sum-of-the-Parts Discounted Cash Flow Analysis*, how the unlevered free cash flows were calculated, and the underlying projection line items for Horizon's existing products and product candidates.[3]

24.     The Proxy Statement further fails to disclose Horizon management's "probability of success risk adjusted estimates of the net revenue generated from TEPEZZA, KRYSTEXXA, UPLIZNA, Rare Disease BU and Development Candidates, and management's allocation of related operating expenses, in each case for fiscal year 2023 through fiscal year 2037" relied upon by Morgan Stanley in its *Sum-of-the-Parts Discounted Cash Flow Analysis*. [4]

25.     With respect to the Company's "Horizon Projections," the Proxy Statement fails to disclose all line items underlying the Company's Unlevered Free Cash Flows.

26.     In addition, the Proxy Statement fails to disclose a summary of the prior sets of Horizon management's projections utilized or reviewed by Morgan Stanley and the Board in connection with the sale process, or a description of the revisions made to the previous projection

---

[3] Proxy Statement at 19.

[4] *Id.* at 19-20.

set(s), including with respect to Horizon's risk-adjusted long range plan, which had been reviewed by the Horizon Board at its regular board meeting in July 2022 and was utilized by Morgan Stanley in connection with the October 16, 2022 Board meeting. *See id.* at 8.

***Material Misrepresentations and/or Omissions Concerning Morgan Stanley's Financial Analyses***

27. The Proxy Statement also fails to disclose material information concerning Morgan Stanley's financial analyses.

28. With respect to the *Discounted Cash Flow Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose: (a) the respective terminal values for each existing medicine or medicine candidate; (b) the allocation of cost of goods sold based on Horizon management estimates; (c) the allocation of selling, general and administrative expenses and research and development costs based on Horizon management allocations; (d) cash flow items allocated as a percentage of net sales based on Horizon management guidance; and (e) the Company's fully diluted outstanding shares.

29. With respect to the *Precedent Transactions - Premia Paid Analysis* performed by Morgan Stanley, the Proxy Statement fails to disclose the identities of the companies analyzed and the individual premiums observed for each company analyzed by the financial advisor.

30. With respect to *Analyst Price Targets* analysis performed by Morgan Stanley, the Proxy Statement fails to disclose the individual price targets observed and the sources thereof.

*Material Misrepresentations and/or Omissions Concerning J.P. Morgan's Potential Conflicts of Interest*

31.     The Proxy Statement fails to disclose material information concerning potential conflicts of interest faced by the Company's additional financial advisor J.P. Morgan, including, with respect to J.P. Morgan's engagement, the Proxy Statement fails to disclose: (a) how much compensation J.P. Morgan has received or will receive in connection with its engagement for its services provided to Horizon; (b) how much J.P. Morgan's compensation that is contingent upon consummation of the Proposed Transaction; and (c) whether J.P. Morgan has performed any services for any parties to the Merger Agreement in the prior two years and, if so, the nature of the services performed and amount of compensation received.

32.     The omission of the above-referenced information renders statements in the "Horizon Unaudited Prospective Financial Information," "Opinion of Morgan Stanley & Co. LLC," and "Background of the Transaction" sections of the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act.

33.     Absent disclosure of the foregoing material information prior to the vote on the Proposed Transaction, Plaintiff and the other stockholders of the Company will be unable to make a sufficiently informed decision in connection with the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Horizon**

34.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

35.     The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially misleading, in violation of Section 14(a) of the Exchange Act and Rule 14a-9.  Horizon is liable as the issuer of these statements.

36.     The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants.  By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

37.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

38.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

39.     The Proxy Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

40.     By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

41.     Because of the false and misleading statements in the Proxy Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claims for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

42.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43.     The Individual Defendants acted as controlling persons of Horizon within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of Horizon and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

44.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

45.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

46.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as

controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in her favor on behalf of Horizon, and against defendants, as follows:

A.      Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above that has been omitted from the Proxy Statement;

B.      In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Directing the Individual Defendants to file a Proxy Statement that does not contain any untrue statements of material fact;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated:  January 26, 2023

By   **ACOCELLI LAW, PLLC**

*/s/ Richard A. Acocelli*
Richard A. Acocelli
33 Flying Point Road, Suite 131
Southampton, NY 11968
Tel: (631) 204-6187
Email: racocelli@acocellilaw.com

**OF COUNSEL:**

*Attorneys for Plaintiff*

**LONG LAW, LLC**
Brian D. Long
3828 Kennett Pike, Suite 208
Wilmington, DE 19807
Telephone: (302) 729-9100
Email: BDLong@LongLawDE.com